UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DAVID ANTHONY McKINNEY    :
      Plaintiff    :
          :
   v.    :   CIVIL NO. 4:CV-03-441
          :
          :   (Judge McClure)
UNITED STATES OF AMERICA,    :
      Defendant    :

## MEMORANDUM AND ORDER

September 23, 2005

**Background**

David Anthony McKinney ("Plaintiff"), an inmate presently confined at the United States Penitentiary, Marion, Illinois ("USP-Marion"), filed this combined civil rights / Federal Tort Claims Act ("FTCA") action. Originally named as Defendants were United States Attorney General John Ashcroft; Kathleen Hawk-Sawyer, former Director of the Federal Bureau of Prisons (BOP); USP-Marion Warden E.A. Stepp and thirteen (13) officials at McKinney's prior place of confinement, the Allenwood United States Penitentiary, White Deer, Pennsylvania ("USP-Allenwood").

By Memorandum and Order dated January 16, 2004, the Defendants' motion

to dismiss was granted in part. The civil rights portion of the complaint was dismissed as being barred by the applicable statue of limitations. However, McKinney's FTCA claims were allowed to proceed and the United States of America was substituted as sole Defendant.

According to the complaint, on May 18, 2000, Correctional Officer Simpler handcuffed the Plaintiff and escorted him to Lieutenant Noone. Upon their arrival at the front of the prison's Special Housing Unit ("SHU"), Noone took the handcuffs from Simpler and directed McKinney towards the SHU Property Room. McKinney alleges that he was subsequently knocked unconscious when Correctional Officer T. Burke forced him into the Property Room and "slammed me down to the floor."[1] Record document no. 1, ¶ IV. After regaining consciousness, Burke instructed McKinney to look out the window where he saw J. Fenney smiling at him. The complaint adds that at this juncture "the attacker took out his knife and attempted to kill me." Id.

When the Plaintiff began pleading for his life, Burke ceased the attack and told McKinney that the assault had been ordered by Original Defendants R. Eldridge

---

[1] Noone, Burke, and Simpler were among the thirteen (13) USP-Allenwood officials named as Original Defendants.

and Fenney. However, Burke resumed the beating when Fenney began banging on the window. Specifically, the guard purportedly slammed Plaintiff's head into the Property Room door. After leaving the Property Room, Burke pushed McKinney into the walls of the common area of the SHU. Burke proceeded to throw the prisoner to the floor with the assistance of other correctional staff. It is alleged that Burke then pulled Plaintiff's left elbow in an upward motion with such force that the prisoner suffered a fracture to his left arm.

When McKinney informed Lieutenant Arrington that he had been assaulted, Arrington purportedly ordered that a videotape taken of the attack be erased. Lieutenant Gonzales subsequently served McKinney with an incident report regarding the altercation, took his statement and indicated that he would look into the incident. Plaintiff claims that neither Gonzales, Warden Mendez nor the BOP took any corrective action. The complaint further alleged that McKinney was intentionally delayed needed treatment for his broken left arm.

Following the incident, Plaintiff was subjected to additional verbal threats and physical abuse by Defendants Burke and Matlack. His remaining contention asserts that he was assaulted by unidentified correctional staff following his arrival at

3

USP-Marion. McKinney seeks monetary damages and a transfer from USP-Marion to another correctional facility.

Presently pending is the Defendants' motion requesting entry of summary judgment. The motion (Record document no. 48) has been briefed and is ripe for disposition. For the reasons outlined below, the motion will be granted.

## Discussion

## Standard of Review

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. "[T]he standard [for granting

>summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...."

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case."  Celotex, supra, 106 S.Ct. at 2553 and 2554.  Once the moving party has satisfied its burden, the nonmoving party must present "affirmative evidence" to defeat the motion, consisting of verified or documented materials.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  Issues of fact are "genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment.  Id.  In evaluating a motion for summary judgment, the entire record must be examined in the light most favorable to the nonmoving party.

The  Defendant claims entitlement to summary judgment on the grounds that: (1) Plaintiff's intentional tort claim relating to the alleged assault is not actionable under

the FTCA; and (2) McKinney's complaint fails to set forth a viable claim of medical negligence.

**<u>Intentional Tort Exception</u>**

Defendant's initial argument is that Plaintiff's claim is barred by the intentional tort exception of the FTCA.  In response to the motion, Plaintiff has filed a motion (Record document no. 52) indicating that copies of his institutional medical records which he intended to submit in opposition to the summary judgment motion were given to an official at USP-Marion for photocopying.  However, the USP-Marion official is allegedly refusing to return those documents.  Since consideration of the Plaintiff's medical records are not relevant to the disposition of Defendant's pending summary judgment motion, his motion will be denied without prejudice.  However, McKinney may initiate a separate action against any USP-Marion official whom he believes has violated his constitutional rights before a court of proper jurisdiction.

The FTCA provides a remedy in damages for the simple negligence of employees of the United States.  <u>United States v. Muniz</u>, 374 U.S. 150, 150 (1963).  Under the FTCA,  sovereign immunity is waived against person s suing the federal government for the commission of various torts.  <u>Simon v. United States</u>, 341 F. 3d

193, 200 (3d Cir. 2003). In presenting an FTCA claim, a plaintiff must show: (1) that a duty was owed to him by a defendant; (2) a negligent breach of said duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injury/loss. Mahler v. United States, 196 F. Supp. 362, 364 (W.D. Pa. 1961), aff'd, 306 F.2d 713 (3d Cir.), cert. denied, 371 U.S. 923 (1962).

The United States is only liable under the FTCA for conduct by government employees while acting within their scope of employment. Matsko v. United States, 372 F.3d 556, 559 (3d Cir. 2004). When determining if a defendant was acting within the scope of his employment at the time of the underlying incident, courts must look to the law of the state where the incident occurred. Doughty v. United States Postal Service, 359 F. Supp.2d 361, 365 (N.J. 2005).

It is undisputed that Plaintiff filed and exhausted an administrative tort claim regarding the May 18, 2000 incident and subsequent mistreatment "up until September of 2000" by the correctional officers who were allegedly involved in the initial altercation. See Record document 26, Exhibit 3. Defendant indicates that the May 18, 2000 incident, a physical confrontation between Plaintiff and Officer Burke, occurred when Burke was acting within the scope of his BOP employment in that he was

escorting the prisoner to the Lieutenant's office.  See Record document no. 50, p. 12.

The United States is immune from certain intentional torts committed by its agents.  For instance, the United States is not liable for claims arising out of assaultand/or battery committed by federal employees within the scope of their employment unless the employee was an investigative or law enforcement officer.  See 28 U.S.C. § 2680(h).  It has been recognized within this district that BOP staff members may be considered law enforcement officers.  See King v. United States, Civil No. 93-258, slip op. at 2 (M.D. Pa. July 276, 1993)(Kosik, J.); Zakaria v. Bureau of Prisons, Civil No. 95-1787, slip op. at p. 7-9 (M.D. Pa.  April 29, 1998)(McClure, J.). The Defendant does not dispute that Correctional Officer Burke may be deemed to be an investigative/law enforcement officer for purposes of § 2680(h).  See  Record document no. 50, p. 11.

However, despite its concession that Correctional Officer Burke is considered a law enforcement officer for purposes of § 2680(h), the Defendant contends that because Plaintiff's injury was not sustained during an arrest, search, or seizure, his FTCA claim is precluded by the Third Circuit's interpretation of  § 2680(h) in  Pooler v. United States, 787 F.2d. 868, 872 (3d Cir. 1986).

In Pooler, the Third Circuit addressed an FTCA claim regarding the conduct of a police officer employed by the Veterans Administration ("VA").  The Court noted that § 2680(h) waives the government's sovereign immunity with regards to certain acts or omissions of law enforcement or investigative officers of the United States Government.  It added that "[t]he statute defines an investigative or law enforcement officer as "any officer of the United States who is empowered by law to execute searches seize evidence, or to make arrests for violations of federal law.'" Id.

The Third Circuit noted that despite a generous reading of the complaint, it did not assert that the VA official had "committed an intentional tort while executing a search, seizing evidence, or making an arrest." Id.  It noted that it was in the course of those "specified government activities ... that government agents come most directly in contact with members of the public." Id.  Based on the underlying legislative history, Pooler concluded that the intentional tort exception should only apply to activities of officers "engaging in searches, seizures or arrests."[2] Id.

In Matsko, the Third Circuit acknowledged that Pooler set forth a narrow reading of § 2680(h), but declined to undertake a determination as to whether Pooler

---

[2]  This Court recognizes that other courts not bound by the Pooler holding have adopted a broader view.  See Oritz v. Pearson, 88 F. Supp.2d 151, 164-65 (S.D.N.Y. 2000).

should be broadened to encompass all activities undertaken by investigative officers. Matsko, 372 F.3d at 560. Pooler's determination that the intentional tort exception of § 2680(h) is limited to specific kinds of law enforcement activity is binding precedent on this Court.

In the present case, the alleged unconstitutional conduct of May 18, 2000 did not occur during the course of an arrest. Second, the challenged actions were not undertaken during the course of a search. The third enumerated activity set forth in Pooler was seizure.

It is noted that the most common type of seizure is an arrest which results in detention. However, an investigative stop that momentarily detains a person has been held to be a seizure. See Terry v. Ohio, 392 U.S. 1 (1968). In Gallo v. City of Philadelphia, 161 F.3d 217, 223 (3d Cir. 1998) the Third Circuit recognized that "Supreme Court decisions provide that a seizure is a show of authority that restrains the liberty of a citizen." It added that an intentional limitation of liberty constitutes a seizure. See id. at 225.

Based on McKinney's allegations there is a genuine issue as to whether the placement of Plaintiff in handcuffs and his being escorted to the SHU Property Room constituted a seizure. However, the Third Circuit clearly indicated that the seizure for

purposes of § 2680(h) referred only to the seizure of evidence.  Pooler, 787 F.3d at 872.  In the present case, there are no facts alleged which could support a determination that the alleged conduct of May 18, 2000 occurred during a seizure of evidence as contemplated by Pooler.  Thus, although the purported conduct in the present case is outrageous, it did not take place during an arrest, search, or seizure of evidence.  Although Plaintiff cannot obtain relief under the FTCA, his claims of being subjected to excessive force were actionable civil rights claims.  Unfortunately, McKinney failed to pursue that remedy in a timely manner.

In conclusion, Correctional Officer Burke was acting within the scope of his employment when the alleged assault occurred.  Burke's duties as a federal correctional officer qualifies him as being an investigative or law enforcement officer for purposes of the FTCA.  However, since the alleged assault did not transpire during one of the enumerated acts recognized under Pooler, entry of summary judgment in favor of the Defendant with respect to McKinney's allegation of being assaulted and related claims is appropriate.[3]

---

[3] The Defendant does not specifically address the Plaintiff's remaining FTCA claim that the correctional officers involved in the May 18, 2000 incident subjected him to subsequent mistreatment up until September, 2000.  Since there is no indication whatsoever that those general assertions of harassment took place during an arrest, search or seizure, they are likewise subject to dismissal.

11

**Negligent Medical Care**

The Defendant next contends that "[t]o the extent this Court may construe McKinney's complaint to raise a claim of medical mistreatment for the injury he received ... McKinney fails to state a claim of medical negligence." Record document no. 50, p. 12.

This Court's Memorandum and Order of January 16, 2004 correctly noted Plaintiff filed an administrative tort claim regarding the alleged assault by Burke on May 18, 2000 "and subsequent mistreatment at that facility." Record document no. 31, p. 10. A review of Plaintiff's administrative tort claim provided that in addition to his May 18, 2000 claim of being assaulted, he sought relief based on subsequent treatment that he received from the correctional officers involved in the initial incident until September, 2000. The administrative tort claim did not assert any claims of medical mistreatment. See Record document no. 26, Exhibit 3. On the contrary, it acknowledged that Plaintiff was taken to an outside hospital for treatment following the assault.

In conclusion, since Plaintiff has not asserted an FTCA claim based upon negligent medical care, further discussion of Defendant's remaining summary judgment argument is unwarranted.  Consequently,

**IT IS HEREBY ORDERED THAT:**

1. Defendant's motion for summary judgment (Record document no. 48) is GRANTED.
2. The Clerk of Court is directed to CLOSE the case.
3. Plaintiff's motion seeking the return of his medical records (Record document no. 52) is DENIED without prejudice.

   s/ James F. McClure, Jr.  
JAMES F. McCLURE, JR.  
United States District Judge